THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LADELL HENDERSON, Defendant-Appellant.

First District (3rd Division)   No. 85—1290

Opinion filed September 28, 1988.—Rehearing denied October 24, 1988.

Steven Clark and Cheryl M. Berdelle, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Christopher J. Cummings, and Michael J. O'Brien, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant, Ladell Henderson, was found guilty of murder, attempted murder, home invasion and conspiracy to commit murder. Defendant was sentenced to natural life imprisonment for murder, 30 years for attempted murder and seven years for conspiracy to commit murder. Defendant was not sentenced on the conviction for home invasion. On appeal, defendant argues that (1) the trial court's instruction on attempted murder was erroneous in that it allowed the jury to find defendant guilty without finding that he acted with the specific intent to kill; (2) the trial court improperly excluded evidence of the complaining witness' alleged drug addiction; (3) the trial court erroneously denied defendant's motion to suppress his pretrial statement; (4) the State was improperly permitted to bolster the complainant's testimony; (5) the trial court abused its discretion in sentencing defendant to a term of natural life imprisonment; and (6) defendant was improperly convicted and sentenced on both murder and conspiracy to commit murder. We affirm in part and reverse in part.

The testimony introduced by the State at trial establishes that on February 28, 1984, Mona Chavez and her uncle, Dennis Leonard, were at home watching television. Chavez heard a knock on the door. When Leonard opened the door, defendant and two other men were standing in the doorway. Two of the men grabbed Leonard and threw him to the floor. Defendant then walked to Chavez and said, "You

gonna die bitch." Defendant told Leonard that he was going to die, pulled out a gun and fired two shots into the back of Leonard's head. Chavez pleaded for her life with defendant but he told her that if he could not have her then nobody would. Defendant then grabbed her hair, pulled her head to the side and shot her.

Chavez stumbled down the apartment stairs and cried for help. When the police arrived Chavez informed them that defendant had shot her. Chavez knew defendant from the neighborhood because he had asked her several times to be "his lady." Chavez had also seen defendant four days prior to the shooting because he kicked her back door in to her apartment and took some of her personal possessions.

Assistant State's Attorney Kim Kardas, who interviewed defendant subsequent to defendant's arrest, also testified. Kardas testified that prior to his questions directed to defendant, he informed defendant that he was an assistant State's Attorney. Kardas read defendant his rights and defendant indicated that he understood. According to Kardas, defendant stated that he knew what an assistant State's Attorney was and also knew that Kardas was not his lawyer.

According to defendant's statement, on the evening of the shooting, defendant was informed by someone named Billy Ray that there was a contract out on Chavez. Billy Ray wanted defendant to take him to Chavez' apartment. Defendant, Billy Ray and another man, "Speedy," went to Chavez' place. Leonard opened the door and told Billy Ray that he thought Chavez' debt of $1,500 had been settled. Billy Ray and Speedy took out their guns and told Leonard to lie down on the floor. In response to Chavez' request for help, defendant informed her that it was out of his hands. Billy Ray and Speedy told defendant to leave the apartment. As defendant left the apartment, he heard the shots that were fired.

After Kardas took defendant's statement and defendant began to read it to make any corrections or changes, defendant stopped on the second page when he saw the words "Assistant State's Attorney." Defendant then told Kardas, "I thought you were my lawyer." Kardas testified that defendant then claimed that Kardas stated that he was defendant's lawyer.

Prior to trial, defendant made a motion to suppress this statement. At the hearing, the defense presented witnesses who testified as to defendant's intellectual capabilities. Leonard Unterberger, a psychologist, stated that defendant has a below average I.Q. of 64. He further stated that defendant possesses limited reading abilities. Unterberger's conclusions were based upon diagnostic work performed by the psychological examiners under Unterberger's supervision.

The trial court denied defendant's motion to suppress. Following trial, defendant was found guilty by a jury and sentenced to natural life imprisonment for the murder, 30 years for attempted murder and seven years for conspiracy. No sentence was imposed for home invasion and the conviction for this charge is not a contention in this appeal.

■ Defendant first argues that the trial court's instruction on attempted murder was erroneous in that it allowed the jury to find defendant guilty of murder without finding that he acted with the specific intent to kill.

The jury was instructed as follows:

"A person commits the offense of murder when he kills an individual, if, in performing the acts which cause the death, he intends to kill or do great bodily harm to that individual; or he knows that such acts would cause death to that individual; or he knows that such acts create a strong probability of death or great bodily harm to that individual; or he is committing the offense of home invasion.

\* \* \*

A person commits the offense of attempt murder when he, with intent to commit the offense of murder, does any act which constitutes a substantial step toward the commission of the offense of murder.

\* \* \*

The offense attempted need not have been committed. To sustain the charge of attempt, the State must prove the following propositions:

First, that the defendant, or one for whose conduct he is legally responsible, performed an act which constituted a substantial step toward the commission of the offense of murder; and second, that the offender, or one for whose conduct he is legally responsible, did so with intent to commit the offense of murder."

The instruction as given makes specific reference to the "intent to commit the offense of murder." However, relying on *People v. Kraft* (1985), 133 Ill. App. 3d 294, 478 N.E.2d 1154, defendant argues that this instruction allowed the jury to convict him if they found that he possessed less than the specific intent to commit murder. We disagree.

In *Kraft*, the court held that because attempted murder requires the mental state of intent to kill, the instruction given, which "permitted a conviction upon a finding that defendant acted with knowledge that his actions created a strong probability of death even if the

jury believed defendant did not intend to kill anyone," was defective. 133 Ill. App. 3d at 302, 478 N.E.2d at 1160.

*Kraft*, however, is distinguishable from the case at bar. In *Kraft*, the defendant was charged only with attempted murder. In the instant case, however, defendant was charged with both attempted murder and murder. It would be illogical to say that the court could not give an instruction on murder containing alternate states of mind when defendant was in fact charged with murder and was entitled to an instruction thereon. We therefore find defendant's argument unpersuasive and conclude that the instructions as given did not allow the jury to find defendant guilty of attempted murder without finding that he had the specific intent to kill. Accordingly, the trial court did not err in giving the instructions to the jury.

■■ ■ Defendant next argues that the trial court improperly excluded evidence of the complaining witness' alleged drug addiction. Defendant asserts that evidence of habitual drug use is a significant fact in evaluating the credibility of a witness. While we agree that a witness' drug addiction at the time that an offense or event occurred is a proper area for cross-examination, the trial court is vested with discretion to determine the admissibility of evidence. Thus, the trial court's determination will not be disturbed on review absent an abuse of that discretion. *People v. Rogers* (1985), 135 Ill. App. 3d 608, 624, 482 N.E.2d 639, 650.

Here, defendant attempted to establish that the victim had been observed using drugs "on numerous occasions" prior to the night of the crime. On cross-examination, the victim was questioned about her relationship with a defense witness who the defense asserted would testify about the victim's alleged drug use. The victim denied any involvement with this defense witness as well as any drug use. Defendant did not question the victim any further regarding this matter. However, defendant later attempted to introduce evidence of the victim's alleged drug use. Following defendant's offer of proof, the trial court excluded this evidence finding that "the only reason [you're] doing it is to dirty up the witness."

Defendant made no reference or qualification as to when the victim allegedly used drugs or the extent of impairment from the use of any drugs. Thus, we are inclined to agree with the trial court that such evidence would not shed light on the victim's ability to adequately perceive the events as they occurred on the night of the offense. To the contrary, this evidence would simply "dirty up" the witness in the eyes of the jury. Accordingly, we find that the trial court properly excluded any evidence of the victim's alleged drug addiction.

■■ ■ Defendant also argues that the trial court erred in denying defendant's motion to suppress his pretrial statement. Defendant presented testimony evincing his impaired intellectual capabilities and his below average I.Q. Based upon this evidence, defendant argues that his statement was not made voluntarily and that he did not knowingly waive his right to counsel.

We initially note that evidence of limited intellectual capacity alone does not indicate that a defendant is incapable of waiving his constitutional rights and making a voluntary confession. (*People v. Ellison* (1984), 126 Ill. App. 3d 985, 992, 466 N.E.2d 1024, 1028.) To the contrary, it is only one of the issues to be considered in reviewing the totality of the circumstances under which a confession is made. Moreover, the police are not required to conduct a mental examination of the accused with a view to ascertaining his ability to comprehend his rights as a prerequisite to accepting the accused's voluntary waiver. (*People v. Cooper* (1975), 30 Ill. App. 3d 326, 332, 332 N.E.2d 453, 458.) The particular facts and circumstances of each case as well as the experience, conduct and background of the accused must be considered in determining whether a waiver is knowingly and intelligently made.

In reviewing the totality of circumstances surrounding defendant's statement, we find that a preponderance of the evidence demonstrates that the defendant understood and knowingly waived his constitutional rights. Where as here the record supports a finding that defendant's subpar mentality did not interfere with his ability to comprehend the meaning of a voluntarily made statement or a right to counsel, his statement will not be suppressed.

■ Defendant next argues that the State was improperly permitted to bolster the victim's in-court testimony with prior consistent out-of-court statements. Defendant objects to the victim's testimony of an identification she made to the police the morning following the incident. Defendant also objects to an investigating police officer's testimony of the identification the victim made at the scene.

In *People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223, our supreme court recognized that although a witness may not testify as to out-of-court statements made for the purpose of corroborating his in-court testimony, that rule does not apply to statements of identification. (81 Ill. 2d at 578, 411 N.E.2d at 227.) The court noted that evidence of out-of-court identifications by both the identifying witness and a third person who saw or heard the identification is admissible for the limited purpose of corroborating the in-court identification. The court stated that such corroboration is justified to rebut the no-

tion that "by the time of trial, the witness' mind has become so conditioned that there is little likelihood that he would not identify the person in court." 81 Ill. 2d at 578, 411 N.E.2d at 227.

Thus, based upon the holding in *Rogers*, we find that the trial court properly permitted the victim as well as the police officer to testify as to the victim's prior identification of defendant.

■■ ■ Defendant next argues that the trial court abused its discretion in sentencing defendant to a term of natural life imprisonment. We disagree.

The imposition of a sentence is a matter of judicial discretion, and absent an abuse of that discretion, the trial court's determination will not be disturbed on appeal. (*People v. Lipa* (1982), 109 Ill. App. 3d 610, 614, 440 N.E.2d 1062, 1065.) Moreover, a trial court's determination of a sentence is entitled to great deference and weight on appeal, because it is in a better position than a reviewing court to determine the proper sentence. The trial court has the opportunity to consider the subjective circumstances in each particular case such as the defendant's (1) demeanor and character; (2) mentality; (3) abnormal or subnormal tendencies, and (4) natural inclination or aversion to commit crime. *People v. Reese* (1984), 121 Ill. App. 3d 977, 989, 460 N.E.2d 446, 454.

In the case at bar, the State, in aggravation, presented evidence that defendant had been adjudicated a delinquent three years prior for attempted murder and aggravated battery. The State also introduced evidence that defendant was on probation for burglary at the time of this offense. In light of the nature of this crime and defendant's background, we find that the trial court did not abuse its discretion in sentencing defendant.

■■ Defendant next argues that he was improperly convicted and sentenced on both murder and conspiracy to commit murder because there is a statutory prohibition against convictions for both the inchoate and the principal offense. The State concedes that under section 8—5 of the Criminal Code of 1961 "[n]o person shall be convicted of both the inchoate and the principal offense." (Ill. Rev. Stat. 1985, ch. 38, par. 8—5.) Accordingly, we vacate defendant's conviction for conspiracy to commit murder and affirm defendant's conviction and sentence for attempted murder and murder.

Affirmed in part; vacated in part.

McNAMARA and FREEMAN, JJ., concur.