In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2035

LADELL HENDERSON,

*Plaintiff-Appellant,*

*v.*

PARTHASARATHI GHOSH, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:10-cv-06836 — **George M. Marovich**, *Judge.*

ARGUED JANUARY 8, 2014 — DECIDED JUNE 18, 2014

Before BAUER, WILLIAMS, and TINDER, *Circuit Judges.*

PER CURIAM. Ladell Henderson, a prisoner at the Stateville Correctional Center in Illinois, sued health care providers and other corrections employees alleging deliberate indifference to his serious medical needs. The district court denied his motions for recruitment of counsel filed during the pleading and discovery phases of the litigation. The defendants filed a motion for summary judgment, and Henderson filed another motion for recruitment of counsel,

which was granted. After counsel filed Henderson's summary judgment response, the district court granted the defendants summary judgment. Henderson now appeals from that judgment, contending that it should be overturned because of error in the denials of his requests for recruitment of counsel. We reverse.

### I. Background

Henderson has been an inmate at Stateville since 1995. He was diagnosed with high blood pressure in 1999 and with diabetes in 2000. He has received some medical treatment for both conditions. In September 2009, Henderson suffered diabetic hypoglycemia and tremulous convulsions in his cell and was taken to Stateville's emergency room for evaluation. He underwent diagnostic testing, which revealed that his blood urea nitrogen, potassium, and creatinine levels were "out of range." At an appointment with Dr. Liping Zhang in early October 2009, Henderson was informed that he had a "bad kidney problem."

Later that month, Henderson was seen by a nephrologist who recommended immediate hospital admission for hemodialysis surgery and treatment. At the hospital Henderson was informed that he had "end-stage" or "Stage 5 kidney failure," which he understood to mean that he would have to undergo dialysis or he would die. According to Henderson, that was the first time anyone informed him that he had kidney disease, renal insufficiency, or kidney failure. Henderson underwent a surgical procedure in order to undergo hemodialysis. He must undergo dialysis several times a week.

In October 2010, Henderson sued the defendants alleging that they acted with deliberate indifference to his serious medical needs. His complaint alleges that diagnostic testing revealed that his toxic waste levels were "out of range," but he was not notified of this fact nor treated for his kidney problems until he had reached Stage 5 kidney disease. At the same time he filed his complaint, Henderson filed a motion for leave to proceed in forma pauperis and a motion for recruitment of counsel under 28 U.S.C. § 1915(e)(1). The latter motion stated that Henderson was an inmate at Stateville, was "illiterate to" civil litigation, was "not competent to prosecute" his case, had a fifth grade education, and had presented his claims through the assistance of other inmates who had no obligation to help him. The affidavit of Lester Dobbey, the inmate who assisted Henderson in preparing his filings, was attached to the motion for counsel. The affidavit stated that Dobbey had only a GED and no formal legal education. It also said that Henderson had stated that he had a low IQ and was "incompetent" to prosecute his case himself.

In February 2011, the district court granted Henderson leave to proceed in forma pauperis and denied his motion for recruitment of counsel. The court found that Henderson had made a reasonable attempt to secure counsel on his own, but concluded that recruitment of counsel was unnecessary at that time. The court acknowledged Henderson's assertion "that his filings have been prepared by other inmates," but noted the filings' "high quality for a pro se prisoner litigating his own case." In the court's determination, Henderson was "competent to litigate his own case." The motion for counsel was denied "without prejudice," and the order stated that Henderson "may renew his motion should circumstances change."

In July, Henderson filed an amended complaint. He also filed a motion for a discovery order, including a request for leave to depose the defendants, and a settlement proposal. A few defendants moved to dismiss the amended complaint; Henderson filed a response in opposition and moved for a default judgment against the defendants based on their non-compliance with his discovery requests. The district court denied that motion and directed the parties to attempt to re-solve any discovery disputes among themselves before bringing the matter before the court.

Then the district court set pretrial deadlines: Fact discovery was ordered closed March 5, 2012; Rule 26(a)(2) expert disclosures were due one month later; and expert discovery was closed one month after that. The court granted the defendants leave to depose Henderson; he was deposed in February 2012. At his deposition, Henderson expressed his desire to have representation of counsel, and he refused to answer questions relating to the merits of his case without assistance of counsel. This prompted the defendants to seek discovery sanctions against him and a 63-day extension of all discovery deadlines.

A few days later, Henderson filed his second motion for recruitment of counsel under § 1915(e)(1). The motion indicated that Henderson's education was unchanged and that "he does not have an adequate education to fully comprehend the … proceedings as they occur." Henderson stated that he "is incompetent to continue to represent himself in" the discovery phase of the proceedings, including the depositions of the defendants and his own deposition. Henderson expressed a need to depose the defendants to adequately prepare for trial and asserted that "he is incapable of depos-

ing [them] due to his poor literacy." He also stated that the inmates who had been assisting him with his case could not provide assistance any longer, and could not help him depose the defendants.

Meanwhile, the district court granted the motion to dismiss, dismissing the claims against two defendants without prejudice. The remaining defendants filed a response in opposition to the second motion for recruitment of counsel. They argued that Henderson's refusal to answer questions at his deposition was an attempt to indirectly obtain recruitment of counsel and that granting his motion would encourage other pro se prisoners to engage in the same type of improper conduct in an effort to obtain recruitment of counsel.

The magistrate judge denied the defendants' motion for discovery sanctions. Then the district judge denied the second motion for recruitment of counsel, ruling that "[t]he Court previously rejected plaintiff's request for counsel … and sees no change in circumstances to revisit that prior decision. Plaintiff has demonstrated throughout this litigation that he is competent to represent himself in all aspects including discovery." Thereafter, Henderson filed a reply to the defendants' response to his motion for counsel, again requesting counsel.

After fact discovery was closed, Henderson moved for leave to file additional interrogatories, asserting that he was not in any position to depose the defendants. He also moved to compel compliance with subpoenas he had issued seeking production of documents, including his medical records and master inmate file. The magistrate judge held a hearing and denied the motion for leave to file additional interrogatories. His reasoning was two-fold: Henderson had not submitted

the interrogatories to be propounded and the motion was made after discovery was closed. The magistrate judge ordered the defendants to produce Henderson's medical records, including his master file to the extent it contained information relating to his case, and denied the motion to compel as moot. The judge also denied the motion to compel compliance with a subpoena issued to a nonparty because the subpoena was issued after discovery had closed.

The defendants moved for summary judgment, arguing that Henderson's lay opinion about what medical treatment he should have received for his chronic medical conditions and kidney disease was insufficient to find them deliberately indifferent. They highlighted Henderson's lack of knowledge regarding the proper treatment for his kidney disease and whether he had been taking renal medications. They also pointed to evidence that he had attended chronic clinics for his diabetes and hypertension every two or three months and the absence of any claim that any defendant refused to treat him for any chronic medical condition. Henderson responded by filing a motion to order the return of his legal documents to his jailhouse lawyer (Dobbey) so he could respond to the summary judgment motion. Henderson claimed that his legal documents were confiscated during a shakedown of Dobbey's cell.

Henderson also filed a third motion for recruitment of counsel and a motion for enlargement of time within which to respond to the summary judgment motion. The latter motion cited Henderson's inability to read and write and the confiscation of his legal documents from Dobbey's cell. Shortly thereafter, the district court granted the third motion for recruitment of counsel, recruited counsel to represent

Henderson pursuant to the United States District Court for the Northern District of Illinois Trial Bar Pro Bono Program ("Pro Bono Program"), and extended the time for Henderson's summary judgment response.[1]

Counsel entered an appearance for Henderson and moved for an additional extension of time within which to respond to the summary judgment motion. The motion was granted. In opposing summary judgment, Henderson ar-

---

[1] Recognizing the number of indigent plaintiffs who cannot afford to pursue their cases in court and how challenging it is for judges to ask lawyers to volunteer their time to take these assignments, the United States District Court for the Northern District of Illinois created a committee composed of both judges and attorneys roughly thirty years ago to address this issue. The judges, adopting the committee's recommendation, created the Pro Bono Program. Any attorney who seeks admittance to the N.D. Ill. Trial Bar has the responsibility to serve as an appointed attorney in *pro se* civil or appellate matters pursuant to N.D. Ill. Local Rule 83.11(g). When the need arises, the clerk selects names at random from a panel of potential counsel. N.D. Ill. L.R. 83.35. Each panel member gives their relevant background, type of matter they would prefer being appointed to, and other relevant information. *Id.* Trial Bar admission fees are used to reimburse the attorneys for out-of-pocket expenses, such as paying for transcripts of depositions, travel expenses or hiring expert witnesses, up to $3,000, but the attorneys are not paid their fees for the pro bono work. This program has been successfully run for roughly three decades and it has been a great assistance in ensuring that indigent plaintiffs get access to justice. *See Synergy Assocs. v. Sun Biotechnologies, Inc.*, 350 F.3d 681, 684 (7th Cir. 2003) (noting the program "ensure[s] that all deserving litigants, including those without financial means, have access to the counsel in the federal court system"); *see also* N.D. Ill. L.R. 83.35 (setting forth the requirements of the pro bono program). As discussed above, Henderson's counsel was appointed pursuant to the Pro Bono Program. Several other district courts in this circuit have similar procedures for requesting lawyers to represent indigent plaintiffs. *See, e.g.*, C.D. Ill. L.R. 83.5(J); N.D. Ind. L.R. 83-7; S.D. Ind. L.R. 4-6, 83-7.

gued that October 2009 was the first time a medical profes-
sional told him he had kidney disease and that the Stateville
doctors knew of his declining kidney health as early as Feb-
ruary 2007 but did not provide him with the required medi-
cal care until his kidneys completely failed. Henderson
acknowledged that he had received some medical care, but
argued that there were questions about whether that care
was appropriate and whether it met the standards of medi-
cal practice and protocols. He relied on his observations of
other inmates receiving different treatment for kidney dis-
ease and the failure to refer him to a nephrologist for more
than two years after test results first revealed abnormalities.

In ruling on the summary judgment motion, the district
court noted the evidence that Henderson attended clinics for
diabetes and/or hypertension and that on several occasions
between 2007 and January 2009, his blood and urine were
tested. The court also noted that Henderson did not know
whether he was taking medication for kidney disease during
this time period. Finding that Henderson failed to produce
any evidence that the treatment he received between Febru-
ary 2007 and September 2009 "was so far afield of accepted
professional standards as to raise the inference that it was
not based on medical judgment," the court granted the de-
fendants summary judgment. Henderson now appeals the
denials of his first two motions for recruitment of counsel.

## II. Discussion

Although "[t]here is no right to court-appointed counsel
in federal civil litigation," *Olson v. Morgan*, No. 12-2786, —
F.3d —, 2014 WL 1687802, at *2 (7th Cir. Apr. 30, 2014), a dis-
trict court has discretion to recruit counsel to represent an
indigent plaintiff under 28 U.S.C. § 1915(e)(1). If the plaintiff

has made a reasonable attempt to obtain counsel, the court asks, "given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Santiago v. Walls*, 599 F.3d 749, 761 (7th Cir. 2010) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc)) (internal quotation marks omitted). As we recently observed, deciding whether to recruit counsel "is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases." *Olson*, 2014 WL 1687802, at *2. Consequently, "[d]istrict courts are … placed in the unenviable position of identifying, among the sea of people lacking counsel, those who need counsel the most." *Id.* This emphasizes the importance and need of such programs like the Pro Bono Program. *See* footnote 1, *supra.*

We review denials of motions for recruitment of counsel under § 1915(e)(1) for an abuse of discretion, *id.*, asking "not whether [the judge] was right, but whether he was reasonable." *Pruitt*, 503 F.3d at 659 (internal quotation mark omitted). Even if the district court abuses its discretion, we will not reverse unless there has been a showing of prejudice—that "there is a *reasonable likelihood* that the presence of counsel would have made a difference in the outcome of the litigation." *Id.*

In deciding whether the district court abused its discretion, we ask "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Pruitt*, 503 F.3d at 655. "We … examine both the difficulties posed by the particular case and the capabilities of the plaintiff to litigate such a case." *Santiago*, 599 F.3d at 761.

The district court erred in assessing Henderson's compe-
tence to litigate his claims. "The inquiry into the plaintiff's
capacity to handle his own case is a practical one, made in
light of whatever relevant evidence is available on the ques-
tion." *Pruitt*, 503 F.3d at 655. In its first denial of Henderson's
request for counsel, the district court mentioned only that
Henderson alleged "that he is not competent to litigate" and
that he has a fifth grade education. It did not mention that he
has a low IQ. (Although not in the record before the district
court, we know that a psychologist testified in Henderson's
state criminal case that Henderson has a "below average I.Q.
of 64." *People v. Henderson*, 529 N.E.2d 1051, 1053 (Ill. App.
Ct. 1988).) Thus, the court failed to focus on Henderson's ca-
pabilities. Instead, it relied on the abilities of his jailhouse
lawyer who had been preparing his filings for him, noting
that they were "high quality for a pro se prisoner litigating
his own case." (The jailhouse lawyer had only a GED and no
formal legal training.) This is problematic for several rea-
sons.

First, the fact that an inmate receives assistance from a
fellow prisoner should not factor into the decision whether
to recruit counsel. *See, e.g.*, *Pruitt*, 503 F.3d at 655 ("The ques-
tion is whether the *plaintiff* appears competent to *litigate* his
own claims, given their degree of difficulty, and this includes
tasks that normally attend litigation … .") (first emphasis
added). The jailhouse lawyer likely would be unavailable to
assist Henderson with certain aspects of discovery. For ex-
ample, he could not attend or assist in Henderson's deposi-
tion. Henderson's second motion for recruitment of counsel
points out that the inmate who had assisted him could not
assist him in the discovery phase, specifically identifying the
task of deposing the defendants. The district court seems to

have overlooked this fact in denying the second motion for recruitment of counsel. *Compare* Feb. 22, 2011 Minute Entry 2 ("The Court understands plaintiff's assertion that his filings have been prepared by other inmates.") *with* Mar. 12, 2012 Minute Entry 1 ("The Court previously rejected plaintiff's request for counsel … and sees no change in circumstances to revisit that prior decision."). Furthermore, the jailhouse lawyer had no obligation to continue to assist Henderson (or to assist him at all).

If the district court had focused on Henderson's capabilities, it would have given greater consideration to his low IQ, his functional illiteracy and inexperience with civil litigation, his fifth grade education, and his reliance on the assistance of other inmates to present his claims. Henderson's limitations were exacerbated by his incarceration, which further restricted his ability to investigate the facts. *See, e.g.*, *Junior v. Anderson*, 724 F.3d 812, 815 (7th Cir. 2013) ("[A] plaintiff's inability to investigate crucial facts by virtue of his being a prisoner … is a familiar ground for regarding counsel as indispensable to the effective prosecution of the case."), and cases cited therein. Henderson was severely limited in his capacity to litigate his own case.

Moreover, the factual and legal complexity of this case necessitated appointment of counsel. "[C]ases involving complex medical evidence are typically more difficult for pro se defendants." *Santiago*, 599 F.3d at 761; *see also Pruitt*, 503 F.3d at 655–56 (same); *Greeno v. Daley*, 414 F.3d 645, 658 (7th Cir. 2005) (concluding that pro se prisoner's case was "legally more complicated than a typical failure-to-treat claim because it require[d] an assessment of the adequacy of the treatment that [the plaintiff] did receive, a question that

will likely require expert testimony"). And prisoners often face difficulty "when litigating constitutional claims that involve the state of mind of the defendant." *Santiago*, 599 F.3d at 761; *see also id.* at 762 (stating that presenting state-of-mind evidence "is one of the more challenging aspects of section 1983 litigation"); *Olson*, 2014 WL 1687802, at *3 (acknowledging that "some state-of-mind issues may involve subtle questions too complex for pro se litigants" but rejecting the proposition that "state-of-mind questions are categorically too difficult for pro se litigants"); *Swofford v. Mandrell*, 969 F.2d 547, 552 (7th Cir. 1992) (pointing out that the "difficult and subtle question of the state of mind required" for deliberate indifference is "'too complex' for a *pro se* plaintiff to understand") (citation omitted).

Henderson's case involves complex medical terms and concepts: kidney disease, end stage renal failure, creatine and blood urea nitrogen levels, "out of range" lab results, and dialysis, to name a few. This case also requires proof of the defendants' state of mind. To prevail on his Eighth Amendment deliberate indifference claim, Henderson would have to establish that defendants "knew of a substantial risk of harm to [him] and acted or failed to act in disregard of that risk." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) (citations omitted). In addition, he would have to prove that the defendants' treatment of his kidney disease was "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on … [accepted professional] judgment." *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013) (citation and internal quotation mark omitted). Expert medical evidence is required to prove this aspect of his claim. For example, as the district court

noted, Henderson's only evidence that his kidney disease was improperly treated comes from his lab results, "which he, as a layman, clearly cannot properly interpret for a jury," and Henderson does not even know whether he has been taking renal medications all along for his kidney disease. In addition, as an inmate, Henderson lacked the ability to engage a medical expert. Given Henderson's capabilities, his incarceration, and the legal and factual complexities of the case, the district court abused its discretion by denying Henderson's first two requests for appointment of counsel.

And Henderson can show prejudice. As noted, prejudice in this context means "a *reasonable likelihood* that the presence of counsel would have made a difference in the outcome of the litigation." *Pruitt*, 503 F.3d at 659. "[P]rejudice may be established by a litigant's poor performance before or during trial." *Id.* If the plaintiff "was incapable of engaging in any investigation[] or locating and presenting key witnesses or evidence" he can establish the requisite prejudice. *Santiago*, 599 F.3d at 765 (quoting *Pruitt*, 503 F.3d at 659); *see also Junior*, 724 F.3d at 816 (reversing grant of summary judgment in favor of defendant and remanding to the court to recruit counsel for plaintiff where "[a]ll these gaps [in the record] cry out for evidence that a lawyer could obtain but the plaintiff could not").

Because of his documented low IQ, functional illiteracy, poor education, inexperience with civil litigation, and incarceration, Henderson was incapable of obtaining the witnesses and evidence he needed to prevail on his claims. He offered no medical evidence in opposing the defendants' summary judgment motion because he had none. This was fatal to his claims: the district court granted the defendants

summary judgment because Henderson "put forth [no] evidence from which a reasonable jury could conclude that the treatment provided to him … was so far afield of accepted professional standards as to raise the inference that it was not based on medical judgment." Had counsel been recruited during the discovery phase, counsel could have served discovery requests; could have deposed the defendants, probing them about their subjective knowledge of Henderson's kidney health and the accepted standards of care; could have deposed the hospital nephrologist regarding Henderson's medical condition and the proper treatment for kidney disease; and could have produced other evidence on the accepted standard of care, including an expert report, if necessary. Because appointed counsel could have obtained this evidence that Henderson could not, Henderson has shown prejudice.

Furthermore, Henderson was unable to identify three "John or Jane Doe" defendants who were dismissed for failure to prosecute. *See Santiago*, 599 F.3d at 766 (finding prejudice from failure to appoint counsel when plaintiff "was forced to drop Dr. John Doe as a defendant" because he "was unable to ascertain his identity"). Henderson did not obtain answers to interrogatories and a response to a third-party subpoena because he failed to serve them within the deadline for fact discovery. He did not depose any witnesses. A lawyer would have accomplished all these things. And a lawyer would have prepared Henderson for his own deposition, made objections to questions at his deposition, assisted him in reading exhibits, and even checked the transcript to ensure its accuracy, which Henderson could not do. *See Pruitt*, 503 F.3d at 660 (finding prejudice when attorney

would have helped plaintiff "avoid common deposition pit-
falls").

The defendants argue that counsel could have moved to
reopen discovery or to reopen the deadline for expert disclo-
sures in order to defeat the summary judgment motion.
Henderson responds that counsel had no reason to believe
that the district court was willing to reopen discovery. He
points to the magistrate judge's denial of his pro se motion
for additional discovery, which was denied because discov-
ery was closed. Given that counsel was appointed seven
months after fact discovery closed, five months after expert
discovery closed, and two months after the defendants filed
their motion for summary judgment and the denial of Hen-
derson's motion for additional discovery, we tend to agree
that the court was not likely to grant a motion to reopen. *See
Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 733 (7th Cir.
2004) (finding no abuse of discretion in district court's deci-
sion to reject motion to reopen filed "after the close of dis-
covery [and] in the midst of summary judgment briefing");
*Grayson v. O'Neill*, 308 F.3d 808, 816 (7th Cir. 2002) (affirming
denial of motion for additional discovery to respond to
summary judgment when requesting party "had more than
ample opportunity to discover and present evidence"). Alt-
hough Henderson's counsel was not expressly recruited for a
limited purpose as in *Santiago*, 599 F.3d at 766, the proceed-
ings in the district court suggest that counsel was recruited
only to assist Henderson with formulating a response to the
pending summary judgment motion and, if necessary, at tri-
al. And even if a motion to reopen were granted, it seems
likely that discovery would have been limited; the district
court wasn't apt to rewind to the beginning of the case and
allow a "do over" of the discovery phase. Finally, reopening

discovery would not have cured Henderson's failure to identify and serve the John and Jane Doe defendants.

The record establishes that Henderson needed counsel and needed counsel's assistance at every phase of litigation. And there is a reasonable likelihood that the presence of counsel would have made a difference in the outcome of this case. In the sea of indigent litigants without counsel, Henderson should have stood out as someone who needed counsel the most.

### III. Conclusion

We REVERSE the district court's judgment and REMAND the case for further proceedings consistent with this opinion.