NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 1, 2015[*]
Decided June 2, 2015

**Before**

JOEL M. FLAUM, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 14-2980

| | |
|---|---|
| LEONARD ASKEW, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of |
| | Illinois. |
| *v.* | |
| | No. 11-cv-0902-MJR-SCW |
| RANDY DAVIS, et al., | |
| *Defendants-Appellees.* | Michael J. Reagan, |
| | *Chief Judge.* |

**O R D E R**

Leonard Askew, an Illinois prisoner diagnosed with diabetes, appeals from the grant of summary judgment against him in his suit under 42 U.S.C. § 1983 asserting deliberate indifference to his medical needs in violation of the Eighth Amendment.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

Because Askew furnished no evidence suggesting that the defendants provided constitutionally inadequate treatment for his diabetes symptoms, we affirm.

After Askew was transferred to Pinckneyville Correctional Center in January 2011, he faced three medical issues. The first involved his requests for special shoes. Within a month of his arrival, he met with defendant Angel Rector, a nurse practitioner, and told her that he wanted "diabetic shoes." People with diabetic neuropathy (painful nerve damage) are advised to wear properly fitting shoes to relieve pressure on areas of the feet where ulcers are likely to form. *See* Sicco Bus, et al., *Evaluation and Optimization of Therapeutic Footwear for Neuropathic Diabetic Foot Patients Using In-Shoe Plantar Pressure Analysis*, DIABETES CARE (2011), *available at* http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3120171/. Rector noted that Askew's feet were within "normal limits" and denied the request. At a later visit with Rector, Askew again demanded the special shoes. He showed her two shoe requisitions for him from other prisons where he had been previously incarcerated—one from two years earlier and the other eight years old. Rector replied that a doctor must prescribe the shoes.

Askew eventually met with Doctor Vipin Shah to request his special shoes. He told Shah that they were necessary because he had flat feet. The doctor determined that Askew did not have flat feet and did not need the shoes. After Askew filed a grievance to complain about Shah's decision, Christine Brown, the Health Care Unit Administrator, responded that, from the records of his appointment with Shah, the doctor reasonably concluded that Askew did not require the shoes. Randy Davis, the warden, agreed.

Askew eventually received his shoes. A few months after the grievance, Askew again asked Rector for the special shoes. This time she ordered a physical-therapy evaluation of Askew's need for them. The evaluation was not completed, though, because Askew was in segregation at the time of his scheduled appointment. A few months later, Askew met again with Rector, and she ordered a "collegial review" of his need for special shoes based on the then-apparent crowding in his current shoes. Shah and another doctor reviewed the request and approved the shoes, which Askew then received in January 2012, a year after his initial request. During that year, Askew asserts, he experienced severe pain, numbness, and swelling in his feet.

Askew's second issue concerns his prescription for pain medication for his diabetic neuropathy. Records show that six months after he arrived at Pinckneyville, Askew refused to take his dose of Neurontin, which had been prescribed to treat pain in his feet stemming from his neuropathy. When Askew's prescription was set to expire in July, Shah decided not to refill the prescription. The doctor gave two reasons. First,

Askew had already complained about taking too much medication. (In addition to refusing to take Neurontin, he continually refused his insulin doses). Second, although the lack of insulin meant that his blood-sugar was not well controlled, he was "neurologically within normal limits." Askew disputes Shah's first reason, saying that he only resisted taking insulin, not Neurontin.

The third issue concerns foot cream. After his arrival in Pinckneyville, Rector provided Askew with a cream to treat the dry and sore skin on his feet caused by his diabetes. But a month after the Neurontin prescription lapsed, Askew met with Shah who, according to Askew, refused to give him more cream for his feet, which were still dry and sore. Askew filed a grievance the next day with Warden Davis, and Davis forwarded it to Brown, the grievance officer, who denied it because Askew's medical records reflect that Shah prescribed Askew the cream the day after Askew met with him.

Askew later sued the medical officers, Rector and Shah, and the administrators, Brown and Davis. The district court referred the case to a magistrate judge, who recommended granting summary judgment to some defendants based on Askew's failure to exhaust some of his claims. *See* 42 U.S.C. § 1997e(a). Askew did not oppose the recommendation, and since the district court adopted it, Askew has waived his right to appeal the exhaustion ruling, which, in any event, he does not now contest. *See Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). The district court later granted the defendants' motions for summary judgment on all remaining claims. It concluded that Askew presented no evidence to support his claim that Rector or Shah had acted with deliberate indifference regarding the shoes or that Shah had acted with deliberate indifference regarding the prescription and the cream. It also concluded that Brown and Davis, as administrators, could rely on the medical professionals' judgment about the proper treatment.

During the proceedings in the district court, Askew five times moved for recruitment of counsel. He argued that his case was complex, his ability to litigate was restricted by his imprisonment, and his trial would likely involve conflicting and expert testimony. The court denied each request. It explained that Askew at first had not met his threshold burden of showing that he had attempted to find counsel. Later, the court concluded, the case was not overly complex relative to Askew's skills, his filings were easy to understand, and he did not raise any unique discovery problems. The court noted that it would revisit the issue if the case went to trial, which it did not.

On appeal Askew first challenges the grant of summary judgment for Rector and Shah on his claim that their delay in providing him with diabetic shoes violated the

Eighth Amendment. He argues that the one-year delay caused needless pain, and because doctors had ordered the shoes for him at two previous prisons, Rector and Shah deliberately disregarded the necessity of the shoes. But under the Eighth Amendment, prison medical personnel like Rector and Shah are not required to defer to a prior doctor's diagnosis; rather, they are free to make their "own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on . . . professional judgment and does not go against accepted professional standards." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012); *see Norfleet v. Webster*, 439 F.3d 392, 393, 396–97 (7th Cir. 2006) (concluding that doctor was not deliberately indifferent when he did not provide inmate with soft-soled shoes that had been provided at previous prison). The explanations that Rector and Shah gave for deciding that the shoes were not medically necessary in 2011 (that his feet were within "normal limits" and were not flat) show that they exercised professional judgment, thereby satisfying the Eighth Amendment. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008).

Two other reasons persuade us that summary judgment was proper on the shoe claim. First, even if Askew was in pain from diabetic neuropathy when he first requested the shoes, nothing in the record suggests that his shoes were the cause. To the contrary, because, as he concedes, he was not taking his insulin, Askew was not controlling his diabetes, and this neglect may have caused his pain. *See* NAT'L INST. OF NEUROLOGICAL DISORDERS AND STROKE, DIABETIC NEUROPATHY INFORMATION PAGE, http://www.ninds.nih.gov/disorders/diabetic/diabetic.htm (last visited May 13, 2015) ("The first step [in treating diabetic neuropathy] is to bring blood sugar levels under control by diet and medication."). Second, Askew was in disciplinary segregation when the physical-therapy evaluation, which Rector ordered to determine if he needed the shoes, was scheduled. Askew does not contend that Rector or Shaw caused him to miss that evaluation, so he cannot fault them for any delay attributable to his time in segregation.

Askew next challenges the grant of summary judgment on his claim that Shah demonstrated deliberate indifference by not refilling the Neurontin prescription. Because he had been receiving Neurontin for the past three years, Askew contends that his need for it was obvious. But Shah explained that he based his decision on Askew's refusal to take this medicine and his evaluation that, despite Askew's poorly controlled diabetes, he remained "neurologically within normal limits." Although Askew disputes the first reason—that he complained about taking Neurontin—he has not contradicted the legitimacy of Shah's second medical rationale—that based on Askew's current

neurological tests the medication was no longer necessary. This omission defeats his claim. *See Pyles*, 771 F.3d at 409; *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006).

Askew next challenges the grant of summary judgment on his claim that Shah was deliberately indifferent to his need for foot cream. But the first time that Askew met with Shah and asked him for cream, Shah prescribed it the next day. Askew has not provided evidence, or even argued, that the one-day delay exacerbated his condition. *See Gayton v. McCoy*, 593 F.3d 610, 619, 624–25 (7th Cir. 2010); *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008); *Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007).

Askew also contests the grant of summary judgment for Davis and Brown, arguing that they should have intervened to improve his treatment. As administrators, they were permitted to defer to Shah's and Rector's medical opinions. *See King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012); *Johnson*, 433 F.3d at 1010–11. Although Brown was also a nurse, her interaction with Askew was limited to her capacity as an administrator investigating health-related grievances. She is therefore held to the standard of a grievance officer, not a medical professional, and in that capacity she can defer to a treating physician's assessment. *See Burks v. Raemisch*, 555 F.3d 592, 595–96 (7th Cir. 2009) (noting that prison's division of labor must be respected); *Johnson v. Snyder*, 444 F.3d 579, 586 (7th Cir. 2006) (finding it proper for Health Care Unit Administrator—who was also a nurse— to defer to doctor's diagnosis), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013).

Finally, Askew challenges the denials of his five motions for recruitment of counsel. He urges that the district court should have granted his motions because counsel could have better argued his claims. A district court may enlist counsel to assist an unskilled plaintiff with complex litigation. *See Henderson v. Ghosh*, 755 F.3d 559, 564–65 (7th Cir. 2014). But the district court reasonably concluded that, because Askew had filed well-written submissions and the issues were straightforward, the case was not so complex that it necessitated an attorney. *See Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014).

                                                                                                    AFFIRMED.