NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 29, 2015[*]
Decided December 7, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

No. 15-1752

| | |
|---|---|
| CHRISTOPHER GOODVINE, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of |
| | Wisconsin. |
| *v.* | |
| | No. 13-CV-1057 |
| GEORGE MONESE, | |
| *Defendant-Appellee*. | Lynn Adelman, |
| | *Judge*. |

**O R D E R**

Christopher Goodvine, a Wisconsin inmate, suffers from mental illness and has a history of self-harm and suicide attempts. In this action under 42 U.S.C. § 1983, Goodvine claims that a prison psychiatrist violated the Eighth Amendment by not intervening to forestall a suicide attempt that left him seriously injured. The district

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. The appeal is thus submitted on the briefs and record. See FED. R. APP. P. 34(a)(2)(C).

court granted summary judgment for the defendant. Because we conclude that the district court should have recruited counsel for Goodvine, we vacate the judgment and remand for further proceedings.

Goodvine suffers from personality and mood disorders and has harmed himself repeatedly. In August 2012 he was admitted to the Wisconsin Resource Center, a mental-health treatment facility within the state's Department of Corrections, after overdosing on pain medication and lacerating his arms. Goodvine had been treated previously at WRC by the defendant, psychiatrist George Monese. Dr. Monese conducted an intake interview, classified Goodvine as a "high" suicide risk, and noted in his report that Goodvine had been taking the antipsychotic drug Seroquel. Dr. Monese also documented Goodvine's account of chronic suicidal ideation but observed that Goodvine tends to harm himself when he does not get his way.

A month later, Goodvine's treatment at WRC had concluded. On October 1, 2012, Goodvine told Dr. Monese that he was depressed about his impending discharge from WRC and vowed to kill himself to avoid returning to a regular prison. Afterward, in his progress notes, Dr. Monese questioned whether Goodvine's acts of self-harm were primarily volitional rather than impulsive.

Nine days later, on October 10, Goodvine surrendered a stash of Seroquel and Tylenol pills that he had hoarded, he said, for a suicide attempt. After being briefed by the nursing staff, Dr. Monese discontinued the Seroquel prescription. Four days after that, on October 14, Goodvine prepared a will and also requested a standard "Do Not Resuscitate" directive specifically covering October 16 and 17. The next morning, at eight o'clock, Dr. Monese met in the dayroom with Goodvine, who wanted the Seroquel prescription reinstated. Goodvine avers that before leaving he told Dr. Monese he was "imminently suicidal" and likely would harm himself immediately if returned to his cell. But Dr. Monese insists—as he then wrote in his progress notes—that Goodvine had mentioned ongoing, though fleeting, thoughts of self-harm and said that he didn't intend to hurt himself right then. Dr. Monese's notes say that, when confronted about the will and Do Not Resuscitate directive, Goodvine had attributed them to an earlier bout of depression.

After this meeting Goodvine was returned to his cell. Guards did not search him or the cell, and he was not placed on heightened monitoring for suicide risk. Within hours, Goodvine had covered his cell window and lacerated his right arm. A guard, noticing the covered window, instructed Goodvine to uncover it and alerted medical

staff. They found Goodvine still conscious, though blood was streaming down his arm and pooling on the floor. Dr. Monese and paramedics attended Goodvine before he was taken to the hospital. After an overnight stay he was released to WRC and then, two days later, returned to prison.

Goodvine sued Dr. Monese, claiming that he violated the Eighth Amendment by doing nothing to lessen the risk of self-harm after learning during the October 15 meeting that Goodvine was presently suicidal. The district court, after denying three requests from Goodvine to recruit counsel, granted summary judgment for Dr. Monese. The court reasoned that a jury could not find the psychiatrist liable for deciding against additional precautions after the October 15 meeting, since the evidence is undisputed that Dr. Monese did not believe Goodvine to be at immediate risk, and also that Goodvine was being closely monitored by WRC staff.

On appeal, Goodvine challenges the adverse ruling at summary judgment and also contends that the district court abused its discretion in not recruiting counsel. Because we conclude that counsel should have been recruited for Goodvine, we do not discuss the grant of summary judgment.

Though district courts may recruit counsel for indigent litigants, 28 U.S.C. § 1915(e)(1), there is no right to an appointed lawyer in civil litigation, *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). But we have noted on several occasions that lawsuits involving complex medical evidence typically are more difficult for pro se litigants, as are cases involving a defendant's state of mind. See *Santiago v. Walls*, 599 F.3d 749, 761 (7th Cir. 2010); *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc); *Swofford v. Mandrell*, 969 F.2d 547, 552 (7th Cir. 1992); *but see Romanelli v. Suliene*, 615 F.3d 847, 852 (7th Cir. 2010) (rejecting categorical rule that claims of deliberate indifference are always too difficult for pro se litigants). This case presents both challenges.

In declining to recruit counsel for Goodvine, the district court reasoned that the detail, clarity, and organization of his complaint suggested not only that Goodvine was capable of communicating with the court and the defendant, but also that he knew what was necessary to prove his Eighth Amendment claim, that he could request discovery from the defendant, and that he could present his own affidavits and evidence. These factors certainly bear on Goodvine's capacity to represent himself, but they have little to do with the need for medical evidence. Goodvine may have understood the necessity of showing that Dr. Monese departed from accepted professional standards when he did not order greater restrictions after their meeting on October 15. See *Henderson v. Ghosh*,

755 F.3d 559, 566 (7th Cir. 2014) (concluding district court abused discretion in not recruiting counsel where inmate's claim of deliberate indifference required expert medical evidence and proof of defendant's state of mind); *Greeno v. Daley*, 414 F.3d 645, 658 (7th Cir. 2005) (pointing out that inmate's claim of deliberate indifference was "legally more complicated than a typical failure-to-treat claim because" expert testimony likely would be required to assess adequacy of treatment inmate had received). But without a lawyer to assist him in locating expert testimony, Goodvine had no way to assemble the necessary evidence. See *Henderson*, 755 F.3d at 566 (pointing out that, as an inmate, plaintiff lacked ability to engage medical expert); *Santiago*, 599 F.3d at 762 (noting that presenting evidence of prison doctor's state-of-mind "is one of the more challenging aspects of section 1983 litigation"). Thus, the district court went beyond the bounds of its discretion when it refused to recruit counsel.

Furthermore, Goodvine was prejudiced by the district court's decision. See *Santiago*, 599 F.3d at 765 (explaining that this court reviews totality of circumstances to determine if there was reasonable likelihood that presence of counsel would have altered outcome); *Pruitt*, 503 F.3d at 654 (noting that "[e]ven if a district court's denial of counsel amounts to an abuse of its discretion, we will reverse only upon a showing of prejudice"). Indeed, in granting summary judgment for the defendant, the district court repeatedly cited a lack of evidence demonstrating that a minimally competent psychiatrist would have taken additional steps to prevent Goodvine from harming himself on October 15. But Goodvine could not produce this type of medical evidence without assistance from a lawyer. See *Junior v. Anderson*, 724 F.3d 812, 816 (7th Cir. 2013) ("All these gaps cry out for evidence that a lawyer could obtain but the plaintiff could not."); *Pruitt*, 503 F.3d 659–60 (explaining that litigant's poor performance before trial or inability to engage in necessary investigation may establish that appointing counsel would have changed outcome).

The judgment is VACATED, and the case REMANDED for further proceedings consistent with this order.