NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 29, 2021[*]
Decided June 30, 2021

**Before**

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 20-2999

| | |
|---|---|
| ROGER GRAHAM, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Indiana, |
| | Indianapolis Division. |
| *v.* | No. 1:19-cv-00851-JRS-TAB |
| DUSHAN ZATECKY, et al., | James R. Sweeney II, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Roger Graham, an Indiana inmate, was working in the woodshop at Pendleton Correctional Facility when a piece of wood entered his hand. He received two surgeries to correct the problem. Graham has now sued prison officials under 42 U.S.C. § 1983, accusing them of violating his rights under the Eighth Amendment by refusing to authorize a third surgery. The district court entered summary judgment for defendants.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

It correctly reasoned that the undisputed evidence established that the treatment Graham received was constitutionally adequate, so we affirm.

Graham's injury occurred in August 2017. He was working in Pendleton's furniture woodshop when a machine malfunctioned, sending a piece of wood deep into his right hand. Graham went to the infirmary where Dr. Paul Talbot immediately ordered that an outside hospital provide emergency treatment. At the hospital, a surgeon removed the wood from Graham's hand, sutured the wound closed, prescribed Graham an antibiotic, and sent him back to Pendleton.

Graham later had a second surgery. Two months after the first surgery, Graham began complaining of intermittent hand pain. Dr. Talbot examined Graham and, suspecting that wood might still be lodged in the hand, ordered an X-ray. The X-ray showed no foreign objects, however, so he did not refer Graham to any outside providers. That January, Dr. Talbot again saw Graham, who still complained of hand pain. At that visit, Dr. Talbot could see and feel a foreign body in Graham's hand, so he ordered an ultrasound. The ultrasound revealed splinters of wood, leading Dr. Talbot to consult with a hand surgeon. That surgeon recommended, and Graham later received, a second surgery to remove the wood splinters. The surgery occurred in May 2018, about eight months after the first surgery.

Graham wanted a third surgery. When Dr. Talbot saw Graham shortly after his second surgery, Graham insisted that wood remained in his hand. Dr. Talbot noted that Graham had full use of the hand: he was working in the woodshop and performed all activities of daily living. Because Graham could use his hand and the surgeon (who saw him the day before) noted no problems, Dr. Talbot ordered no other intervention. Graham repeated these complaints a few months later to a nurse practitioner, who submitted a request for a consultation about more surgery. After discussing the matter with the regional medical director of Wexford of Indiana, LLC, the prison's medical provider, the prison's medical staff determined that "conservative onsite treatment" was advisable.

Medical staff revisited the issue of a third surgery in June 2019. The regional medical director concluded that, because Graham's hand was not swelling and it had full range of motion with no sign of infection, additional X-rays would determine whether surgery was needed. The X-rays revealed a splinter on the inside of Graham's fourth finger. Graham's medical providers discussed the splinter and concurred that non-surgical conservative care remained appropriate. They based this conclusion on the

location of the splinter, the function of his hand, and the need for Graham, a type-II diabetic, to lose weight and to control his blood-sugar levels better before a third, elective surgery.

Graham next sued Dr. Talbot, Wexford, and prison staff for violating his Eighth Amendment rights by failing to authorize a third surgery. Near the end of discovery, Graham asked the court to recruit counsel for him. It denied that request, finding that Graham wrote well and organized his facts and arguments coherently, so he could litigate the case himself. Later, the court entered summary judgment for defendants. Graham contests that decision only as to Wexford and Dr. Talbot, so we say no more about the other defendants. The court reasoned that Dr. Talbot exercised professional judgment in denying a third surgery, so no reasonable jury could conclude that he violated the Eighth Amendment. And, the court added, Graham identified no policy or custom of Wexford's that led to such a violation.

Graham argues that summary judgment for Dr. Talbot was improper. He accepts that Dr. Talbot responded adequately through the second surgery, but he contends that the doctor violated his Eighth Amendment rights by refusing to recommend a third surgery. To avoid summary judgment, Graham needed to submit evidence that Dr. Talbot intentionally or recklessly disregarded a need for a third surgery. *See Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). The record does not permit such a finding. To the contrary, after the second surgery, Dr. Talbot examined Graham's hand and reasonably decided against another surgery based on three undisputed medical factors: first, his hand had full range of motion and no infection; second, an X-ray placed a single splinter in one finger, and it could be addressed non-surgically; and third, other medical professionals concurred that an elective surgery was risky because of Graham's weight and diabetes. Graham responds that his diabetes was not a factor in deciding whether to perform the first two surgeries. But those surgeries were not elective, and no evidence suggests that, after two recent surgeries, the benefit of a third, elective procedure outweighed the risk to him from his diabetes. On this record, then, a jury could not find that Dr. Talbot's decision was so far afield that no other professional would also follow it. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Graham's remaining claim against Wexford also fails. Because the undisputed evidence reveals that the care Graham received for his hand injury was constitutionally adequate, Wexford cannot be held liable for a deficient policy or practice. *See id*. at 412; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Graham also argues, unpersuasively, that the district court abused its discretion when it decided not to recruit counsel for him. *See Pruitt v. Mote*, 503 F.3d 647, 658 (7th Cir. 2007) (en banc). In denying the request, the court weighed the nature of the case against his competency to litigate it and reasonably found that, in light of his writing and organizational skills, Graham could proceed unassisted. *See id*. at 654–55. Graham responds that he had help preparing his filings, and when evaluating a pro se plaintiff's ability to litigate a case, a court should focus on the litigant's personal skills rather than "on the abilities of his jailhouse lawyer who had been preparing his filings for him." *Henderson v. Ghosh*, 755 F.3d 559, 565 (7th Cir. 2014). But in his deposition, Graham testified that he received help with typing only, not substance. Thus, the court applied the appropriate legal analysis. Graham also argued in the district court that he wanted a lawyer to help him find an expert to examine his hand. But he was not entitled to wait until near the end of discovery to raise requests that, if granted, would require an extension of discovery. *See Stevo v. Frasor*, 662 F.3d 880, 886 (7th Cir. 2011).

AFFIRMED