In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2930

LEONARD DEWITT

*Plaintiff-Appellant,*

*v.*

CORIZON, INC., *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 11-CV-295 — **William T. Lawrence**, *Judge.*

SUBMITTED DECEMBER 9, 2013[*] — DECIDED JULY 25, 2014

Before CUDAHY, ROVNER, and WILLIAMS, *Circuit Judges*

WILLIAMS, *Circuit Judge.* Leonard Dewitt, a 51-year-old former inmate at the Indianapolis Re-Entry Educational Facility, challenges the grant of summary judgment against

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

him in his deliberate indifference suit and also appeals the district court's denial of his three motions to recruit counsel. Because we find that the district court abused its discretion in denying the motions for recruitment of counsel, and those denials affected Dewitt's ability to develop and litigate his case, we will not reach the merits of the summary judgment order. Therefore, we reverse and remand so that the court may recruit counsel and so Dewitt can conduct further discovery in order to litigate the case.

## I. BACKGROUND

Because the district court decided this case on a motion for summary judgment, we recite the facts in the light most favorable to the nonmoving party, Dewitt. *See Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005). Dewitt's eye problems began in 2007 during his first incarceration at the Wabash Correctional Facility, which is a part of the Indiana Department of Corrections ("IDOC"). The IDOC contracts with Appellee Corizon, Inc. to provide medical care to Indiana prisoners. Dewitt submitted the first of many Requests for Healthcare to Corizon stating something was very wrong with his bloodshot left eye and his vision was "like looking through a dirty piece of plastic." Corizon's eye doctor diagnosed him with astigmatism and presbyopia (old-age nearsightedness causing slightly blurry vision), and prescribed eyeglasses.

Three months later, Dewitt submitted another Request for Healthcare after being transferred to a local work-release facility. IDOC medical staff contacted the Plainfield Correctional Facility to set up an appointment for him since the work-release facility did not have any specialists on staff. But Appellee Patty Wirth said that no appointment would

be available for three months, so IDOC medical staff sent Dewitt to a prison physician who noted no obvious abnormalities in his left eye.

In May 2008, Dewitt was released on parole. A doctor determined that Dewitt had a form of glaucoma in his left eye and he was advised in late 2008 to undergo laser-eye surgery to prevent any future attacks. He underwent a surgical procedure on his right eye in early 2009 to remove part of the iris to decrease eye pressure. His left eye continued to have higher than normal intra-ocular pressure.

Dewitt was again incarcerated in 2009, this time at the Putnamville Correctional Facility, where he filed another Request for Healthcare, noting exceptional irritation in his left eye. He was referred to Wishard Hospital where an ophthalmologist prescribed medicated eye drops in order to decrease the pressure. The ophthalmologist told Dewitt if they did not work, he might need to have the eye or portions of it removed. The drops did not work, and, believing he had no real alternative, Dewitt submitted another Request for Healthcare in November to have his left eye removed.

Dewitt received treatment both inside and outside the facility over the next several months, and filed another Request for Healthcare to have his eye removed in February 2011. Corizon's regional medical director, Appellee Dr. Michael Mitcheff, viewed removal as an extreme last resort and suggested a more conservative approach, including medicated eye drops and pain medication. Dewitt was prescribed medication, including a 90-day prescription for Vicodin by defendant Dr. Naveen Rajoli, ultimately received a glaucoma evaluation at the Midwest Eye Institute and eye removal

was recommended. In May 2012, he underwent surgery to remove part of his left eye's ciliary body.

Dewitt filed suit under 42 U.S.C. § 1983 against Corizon, Wirth, and Mitcheff, asserting that they were deliberately indifferent to his glaucoma condition. He also sued Dr. James Stewart and Dr. Rajoli, but Stewart was dismissed from the suit and Dewitt does not mention Rajoli in his brief. In April 2012, Dewitt moved for assistance of counsel, stating his vision problems combined with his tenth-grade education made it difficult for him to conduct discovery and litigate his case. The district court denied his request, finding that Dewitt's claims were not overly complex or meritorious, that Dewitt was familiar with his claims and able to present them, and he was "within the spectrum of most indigent parties." Six months later, Dewitt moved again for assistance of counsel, repeating his earlier statements. He also complained that Appellees had abused discovery rules and delayed their responses. The court denied this request using the same language as the first denial and without addressing the alleged discovery abuses.

After Appellees moved for summary judgment, Dewitt filed a "reply" to Appellees' reply in support of summary judgment, and a request under Federal Rule of Civil Procedure 56(f) (now Rule 56(d)) for further discovery. He again begged the court to recruit counsel so he could conduct discovery. The district court did not address Dewitt's Rule 56(d) motion, but granted Appellees' motion for summary judgment, in part, because Dewitt failed to show Corizon had any "official policy or custom" to delay medical treatment and because Dr. Mitcheff exercised reasoned professional judgment. Dewitt now appeals.

## II. ANALYSIS

Though Dewitt argues the merits of the summary judg-ment order, we do not reach that issue because we hold that Dewitt should have had an attorney throughout the litiga-tion. There is no right to recruitment of counsel in federal civil litigation, but a district court has discretion to recruit counsel under 28 U.S.C. § 1915(e)(1). *See Henderson v. Ghosh*, --- F.3d ---, No. 13-2035, 2014 WL 2757473, at *4 (7th Cir. June 18, 2014) (per curiam). If an indigent plaintiff has made a reasonable attempt to obtain counsel and then files a motion for recruitment of counsel, the district court should ask "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc). We acknowledge this is a "difficult decision" since "[a]lmost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). So we review the denial of the re-cruitment of counsel for an abuse of discretion and will re-verse only if the plaintiff was prejudiced by the denial—*e.g.*, if there is a reasonable likelihood that the recruitment of counsel would have made a difference in the outcome of the litigation. *See Santiago v. Walls*, 599 F.3d 749, 765 (7th Cir. 2010). In so deciding, our case law is clear that a plaintiff can be prejudiced by the lack of counsel pretrial just as easily as during the briefing or trial itself. *See id.* at 765 (noting preju-dice when plaintiff "was incapable of engaging in any inves-tigation[] or locating and presenting key witnesses or evi-dence" (quoting *Pruitt*, 503 F.3d at 659)); *see also Henderson*,

2014 WL 2757473 at *7 (finding prejudice where plaintiff "was incapable of obtaining the witnesses and evidence he needed to prevail on his claims"); *Bracey v. Grondin*, 712 F.3d 1012, 1017 (7th Cir. 2013) ("Complexities anticipated (or arising) during discovery can justify a court's decision to recruit counsel").

The first question, then, is whether the district court abused its discretion in denying the motions for recruitment of counsel. In his first motion, Dewitt requested the recruitment of counsel because of his tenth-grade education, the fact that he was incarcerated and unable to investigate and discover relevant facts. He also pointed out that he was "now totally blind in his left eye and the vision in his right eye is impaired." He discussed the medical complexity of his case, his reliance on "jailhouse lawyers," and his inability "to comprehend with any legal understanding, the discovery rules and the Defendants [sic] motions." The court denied the motion and stated that "the claims by the plaintiff are not of sufficient complexity or merit as to surpass the plaintiff's ability to properly develop and present them," and that "the plaintiff is within the spectrum of 'most indigent parties' because he has and will have a meaningful opportunity to present his claim, he has demonstrated familiarity with his claims and the ability to present them." The court stated that it had considered the complexity of the case and Dewitt's ability to litigate the case—without delving into any of Dewitt's personal characteristics or the specifics of the case— before denying the motion.

The court abused its discretion by failing to explain its reasoning and failing to address all the relevant arguments Dewitt raised. For example, the court characterized Dewitt

as fitting within the spectrum of most pro se litigants and said it had considered his personal characteristics, but it did not identify those characteristics. However, the court did not address the challenges that Dewitt, as a blind and indigent prisoner with a tenth-grade education and no legal experience, faced in being able to investigate crucial facts and depose witnesses, doctors, and other allegedly resistant prison personnel. *See Pruitt*, 503 F.3d at 655 (noting the court "should review any information submitted in support of the request for counsel, as well as the pleadings, communications from, and any contact with the plaintiff"); *see also Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (noting judge should have considered plaintiff's "limited education, mental illness, language difficulties, and lack of access to fellow prisoners or other resources for assistance after his transfer from Stateville"). Moreover, the court's statement that Dewitt "has demonstrated familiarity with his claims and the ability to present them" does not demonstrate that the district court specifically examined Dewitt's personal ability to litigate the case, versus the ability of the "jailhouse lawyer" who Dewitt said in his motion was helping him. The analysis should be of the *plaintiff's* ability to litigate *his own* claims, and the "fact that an inmate receives assistance from a fellow prisoner should not factor into the decision whether to recruit counsel." *Henderson*, 2014 WL 2757473 at *5.

Nor did the court explain why the claims were not of "sufficient complexity" to merit recruitment of counsel. In fact, the case presents complicated medical matters, involves varying recommended courses of treatment by numerous physicians, and required discovery into what constitutes reasonable care for medical professionals. Though not every

deliberate indifference case is so complex and beyond the individual plaintiff's capacity as to warrant the recruitment of counsel, this one was. *See Henderson*, 2014 WL 2757473 at **6–7 (noting case required recruitment of counsel because it "involves complex medical terms and concepts," requires proof of the "defendants' state of mind" and proof of doctor's knowledge of a substantial risk of harm and disregard of that risk). *But see, e.g., Olson*, 750 F.3d at 711–12 (holding no abuse of discretion in denying recruitment of counsel motion for medical indifference case when disputed issue was whether defendant knew of plaintiff's physical condition); *Romanelli v. Suliene*, 615 F.3d 847, 854 (7th Cir. 2010) (finding no abuse of discretion in denying motion in medical indifference case when neither side contested that plaintiff was ill). We are aware that the appointment of counsel in civil cases can pose challenges for judges, who ask lawyers to volunteer their time to take these assignments, and the attorneys who are asked by the judges and who ultimately take the assignments. As a way to combat those issues, we again highlight the work done by the Pro Bono Program for the United States District Court for the Northern District of Illinois Trial Bar, which mandates that members of the Trial Bar serve as an appointed attorney in pro se civil or appellate matters. *See* N.D. Ill. L.R. 83.35; N.D. Ill. L.R. 83.11(g). *See also Henderson*, 2014 WL 2757473 at *3 n.1; *Synergy Assocs. v. Sun Biotechnologies, Inc.*, 350 F.3d 681, 684 (7th Cir. 2003). While other districts in this circuit have similar procedures, *see* C.D. Ill. L.R. 83.5(J), N.D. Ind. L.R. 83-7, S.D. Ind. 4-6, 83-7, the mandatory nature of the Northern District of Illinois's program ensures that judges are not put in the position of repeatedly asking the same counsel to take on appointments, and attorneys are not put in the position of being asked time

and again to take cases by the judges in front of whom they appear on a regular basis.

In Dewitt's second motion to recruit counsel, Dewitt made basically the same arguments while adding that "Defendants are intentionally abusing the discovery rules, they have delayed their responses to the Plaintiff's interrogatories so as to gain an upper hand with the closing of the deadlines the Court has imposed, and [are] now claiming that they have no obligation to answer further interrogatories." The court denied Dewitt's motion without addressing this new argument. Though the district court need not address every point raised in recruitment motions, it must address those that bear directly on whether "the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Pruitt*, 503 F.3d at 655. That includes whether Dewitt was capable of putting a stop to alleged discovery abuses. *See, e.g., Henderson*, 2014 WL 2757473 at *6 (finding court erred by not considering substantive issue, namely appellant's personal capabilities, that was raised in recruitment motion).

Moreover, in his Federal Rule of Civil Procedure 56(f) (now 56(d)) "reply" to Appellees' reply in support of summary judgment, Dewitt requested more time for discovery as well as the recruitment of counsel to aid him in conducting such discovery. Although this was not a separate formal motion requesting counsel, the court should have addressed it. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed"); *Santiago*, 599 F.3d at 765 (noting "the magistrate judge's methodo-

logical lapse in failing to give full consideration to each fac-
tor constitutes an abuse of discretion"); *Pruitt*, 503 F.3d at
658.

Finding that the district court abused its discretion does
not end our inquiry. We must now determine whether
Dewitt was prejudiced. Based on the reasons the court gave
in granting the motion for summary judgment, we find
Dewitt was. For example, the district court determined that
Dr. Mitcheff exercised "reasoned professional judgment" in-
consistent with deliberate indifference. But could a lawyer
have helped Dewitt present sufficient facts to create a genu-
ine issue about why the doctor declined to follow a special-
ist's recommendations or advised a continuation of ineffec-
tive treatments that prolonged his pain? We think there is a
reasonable likelihood counsel could have aided here and
made a difference in the outcome. *See Greeno*, 414 F.3d at 658
(holding case was "legally more complicated than a typical
failure-to-treat claim because it require[d] an assessment of
the adequacy of the treatment that [plaintiff] did receive, a
question that will likely require expert testimony"); *Ortiz v.
Webster*, 655 F.3d 731, 735 (7th Cir. 2011) (analyzing complex-
ities of deliberate indifference claims).

Counsel also could have assisted Dewitt in addressing
his concerns about the alleged discovery violations. Dewitt
filed a motion to compel, to which Appellees responded that
they had replied to all outstanding discovery. The court
found the issue moot based on Appellees' response and de-
nied the motion. Yet, two months later, Dewitt stated in his
second motion for recruitment of counsel that Appellees
were not complying with all discovery requests. That was
still a problem when Dewitt filed his Rule 56(f) request for

more time to conduct discovery. We do not make any determinations on the merits of Dewitt's allegations relating to discovery abuses, but find that had Dewitt had counsel to navigate through discovery, there is a reasonable likelihood that he could have better advocated his position and changed the outcome of the litigation. *See Santiago*, 599 F.3d at 765–66 (noting Appellant's "later attempts to conduct relevant discovery were not successful" and "[t]he treatment afforded him by the defendants was not, it is safe to say, the same treatment that would have been afforded a member of the bar").

Finally, we observe the district court disregarded Dewitt's request under Federal Rule of Civil Procedure 56(f) seeking more time to conduct discovery before the court ruled on Appellees' motion for summary judgment. While a district court has broad discretion to deny such motions, *see Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1056 (7th Cir. 2000), it is improper to decide summary judgment without first ruling on a pending 56(f) motion. *Doe v. Abington Friends School*, 480 F.3d 252, 257 (3d Cir. 2007).

### III. CONCLUSION

Accordingly, we REVERSE the district court's denial of Appellant's motions for recruitment of counsel, VACATE the district court's judgment in favor of Appellees, and REMAND for proceedings consistent with this order.