**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 10, 2016[*]
Decided March 11, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 15-1913

| | |
|---|---|
| DAVONTE LOVE,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Eastern District of Wisconsin. |
| *v.* | No. 11-C-882 |
| KEVIN NYKLEWICZ, et al.,<br>    *Defendants-Appellees*. | Charles N. Clevert, Jr.,<br>*Judge*. |

## O R D E R

DaVonte Love, a Wisconsin inmate who is blind in one eye, challenges the grant of summary judgment against him in this action under 42 U.S.C. § 1983, asserting that his Eighth Amendment rights were violated when he was prevented from attending medical appointments outside the jail. We affirm.

Because the district court decided this case on a motion for summary judgment, we recite the facts in the light most favorable to Love, the nonmoving party. *See Greeno v.*

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

*Daley*, 414 F.3d 645, 648 (7th Cir. 2005). Love has been blind in his right eye since the age of 10, the result of a childhood accident. At some unspecified time after the accident, he underwent a partial enucleation.[1] In late 2008, while he was in Milwaukee County custody, Love was seen by a nurse at the jail for pain and fluid drainage in his right eye after being pepper-sprayed; she noticed a small amount of drainage dried around the eye, but ruled out an infection and arranged for a nurse practitioner to evaluate and treat him a few days later. Love complained of bleeding of the eye, but the examining nurse practitioner remarked that she saw no redness, tearing, or inflammation of his eyelids.

Around this time, Love, through his "Huber" privileges,[2] independently set up an appointment at an optometrist's office. The appointment, however, was not verified by classification staff (the record does not say why), and he was not permitted to leave.

This appeal centers on two scheduled eye appointments that Love was not permitted to attend the following summer, on June 17 and 22. Love's June 17th appointment was confirmed by a fax transmittal from America's Best Contacts & Eyeglasses in Milwaukee. The fax contained two handwritten notations from prison classification officer Alicia Magee. One notation acknowledged that she had spoken to an employee at the store and verified Love's upcoming appointment; the other notation remarked that she had informed Kevin Nyklewicz, a captain at the jail, and "he said hold

---

[1] Partial enucleation, according to Dr. Michael Grebner, the medical director of Milwaukee County Correctional Health Services during Love's incarceration, "is a surgical procedure performed following severe trauma to the eye when restoration of vision is not possible. The contents of the eye are removed. An inert material is then placed inside the empty globe and the globe is sewn closed."

[2] Love's privileges under Wisconsin's "Huber Law," WIS. STAT. § 303.08, permitted him to be released for medical treatment outside the jail (as well as for other approved purposes). Inmates wishing to exercise Huber privileges set up their own appointments, and classification staff at the jail then verify the appointments, ensure travel arrangements, and confirm that the releases are appropriate, raise no security concerns, and comply with judicial orders and the sheriff's office's policies. Although these privileges enable inmates to schedule their own appointments, Dr. Grebner stated that Milwaukee County's correctional system "does not depend in any way upon inmate initiated appointments," and "all medically necessary outside inmate care is scheduled through the Correctional Health System."

off until he says send him." (Captain Nyklewicz, for his part, stated in a declaration that he had no involvement in day-to-day operations of the Huber program during 2008 and 2009, that he "did not personally see any of Love's documented medical appointments for which Love wanted to exercise his Huber privileges," that Love never told him directly about any health conditions, and that he had no access to Love's medical records.) Love's June 22nd appointment was confirmed by a fax transmittal from Grange Vision in Milwaukee, and Magee noted at the bottom of the fax that she had verified the appointment with the office. Love was not permitted to attend either appointment.

Between September 21 and 24, Love scheduled two more appointments for eye examinations and another with a chiropractor, but these too were not verified by classification staff and Love was not released.

Love's Huber privileges were subsequently suspended for a month at the Milwaukee County Sheriff's request (the record does not say why), and upon reinstatement he was released to attend an eye examination on October 30. But he missed a scheduled chiropractic appointment on November 2 and then did not return to jail, and was considered an escapee until his apprehension two days later. He then was placed in disciplinary housing and had no other appointments before his release from county custody on December 22.

In September 2011 Love brought this suit against the Milwaukee County Sheriff, various jail employees, a doctor, and the jail's security director, alleging that they had denied him his Huber privileges to attend eye and mental-health appointments, and he requested the assistance of counsel. A magistrate judge screened his complaint, *see* 28 U.S.C. § 1915A, and allowed him to proceed on his claim that defendants had been deliberately indifferent to his serious medical needs. But the judge declined Love's request for counsel, explaining that he hadn't shown he had tried to find a lawyer and in any event the issues in the case appeared to be straightforward and Love's own submissions suggested that he was competent to litigate it himself.

After discovery Love amended his complaint, substituting Captain Nyklewicz and two unnamed classification officers as defendants. Adding a claim under the Americans with Disabilities Act, *see* 42 U.S.C. § 12132, he asserted that the classification officers refused to follow a state judge's order granting him Huber privileges to seek medical care, mental-health treatment, work or job training, and education, and that Captain Nyklewicz had cancelled his privileges in April 2010. The defendants moved to dismiss the complaint, and the district court denied the motion, permitting Love to

proceed on only his deliberate-indifference claim. The court reopened discovery to provide Love an opportunity to identify the unnamed defendants.

Love again requested recruitment of counsel, this time substantiating his efforts to obtain a lawyer and asserting that his mental-health issues and limited education hindered his ability to litigate his claim and had led him to depend on others' assistance. But the court declined to recruit counsel, stating that Love so far had shown that he was capable of "advocating for himself, investigating his claims, and conducting discovery"; the court reiterated that the claim was "not overly complex."

The court granted the defendants' motion for summary judgment. First, regarding Love's claim that the defendants had violated Wisconsin's Huber statute, the court explained that a claim asserting a violation of Wisconsin state law was not cognizable under § 1983. *See Domka v. Portage Cnty., Wis.*, 523 F.3d 776, 784 (7th Cir. 2008). With respect to Love's claim that his Eighth Amendment rights had been violated when he was denied release from jail for medical appointments, the court explained that Captain Nyklewicz could not be liable because he was alleged to have been personally involved in only one incident, in April 2010—long after Love's release from custody in December 2009—and the court considered it undisputed, based on Nyklewicz's declaration, that he was not responsible for the day-to-day operations of the Huber program in 2008 and 2009. And even if Captain Nyklewicz had been involved in denying Love his Huber privileges, added the court, Love had not submitted evidence to support a finding that any of these appointments was for a serious medical need (as opposed to a routine examination). And to the extent Love asserted that he was being denied release for mental-health needs, he could not point to any evidence reflecting that he had appointments for mental-health treatment outside the jail. Finally, the court remarked that Love had not asserted that the medical or mental-health treatment he received at the jail was substandard.

On appeal Love first disputes the district court's determination that he failed to corroborate his claim that his appointments were needed to address a serious medical need. We are skeptical of the district court's conclusion that he hadn't submitted evidence to support a finding that he had a serious medical need. Even if Love had lost sight in his right eye long before his incarceration, his medical records at the prison reflect that on several occasions he was seen by medical staff in response to complaints of chronic pain, discharge, and bleeding in his right eye—symptoms that even a layperson could recognize as requiring a doctor's attention. *See Knight v. Wiseman*,

590 F.3d 458, 463 (7th Cir. 2009). It is unclear from the record, however, whether Love's appointments at vision centers in June 2009 stemmed from these complaints.

But even if we assume that Love scheduled these appointments for a serious medical need, he still had the burden at summary judgment to produce evidence sufficient for a reasonable jury to infer that Captain Nyklewicz was deliberately indifferent to his condition. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). Prison officials can manifest deliberate indifference to a prisoner's needs by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009). According to Love, Nyklewicz's role in keeping him from his approved appointments is borne out by Alicia Magee's notation on the fax of June 2009, but that notation—without more—does not permit the inference that Nyklewicz acted with the necessary mental state, i.e., that he knew that Love's appointments were necessary to address a serious medical need and disregarded that need. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Love cannot point to evidence suggesting that he informed Nyklewicz about his condition, or that Nyklewicz knew about—or should have been able to infer—his serious need to see an eye doctor.

To the extent Love now asserts that the classification officers processing his appointments knew about his needs and deliberately obstructed treatment, he does not point to any evidence from which this reasonably could be inferred. Even if the staff had seen Love's records and knew of his medical needs, this knowledge by itself would not be enough for a factfinder to conclude that the staff understood that outside care was necessary or that medical staff had ignored or intentionally mistreated him. *See Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008). In any event Love's failure to identify these classification officers—despite having had an opportunity through discovery to do so—dooms his claim. A deliberate-indifference claim requires an inquiry into an official's state of mind, *see Arnett*, 658 F.3d at 751, and the individualized nature of this inquiry requires "identified culprits," *See Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005) (quotation and internal citation omitted).

Finally Love contends that the district court abused its discretion in denying his requests to recruit counsel. *See* 28 U.S.C. § 1915(e)(1). With regard to the denial of his initial motion (and subsequent requests for reconsideration), Magistrate Judge Goodstein and Judge Clevert properly determined that Love had not demonstrated efforts to obtain counsel on his own. *See Bracey v. Grondin*, 712 F.3d 1012, 1016 (7th Cir.

2013). The subsequent denial is more problematic—Judge Clevert's reasons were cursory, as he did not explain why he deemed Love's case "not overly complex," let alone address Love's assertion that he needed to rely on others' assistance—a factor relevant to assessing Love's *personal* ability to litigate the case. *See Dewitt v. Corizon, Inc.*, 760 F.3d 654, 658 (7th Cir. 2014). But Love has not shown how he was prejudiced by the denial of counsel—a reasonable likelihood that counsel would have made a difference in the outcome of the litigation. *Id*. at 657. Even if Love had been able to identify the classification officers, the evidence does not permit an inference that they or Nyklewicz knew of a substantial risk to Love if he were not allowed to attend his out-of-jail eye appointments.

AFFIRMED.