In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3034

THOMAS M. JAMES,

*Plaintiff-Appellant,*

*v.*

LORENZO ELI and NICOLAS P. VILLANUSTRE,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:13-cv-00541-WTL-TAB — **William T. Lawrence**, *Judge.*

SUBMITTED DECEMBER 21, 2016 — DECIDED JANUARY 25, 2017

Before WOOD, *Chief Judge*, and POSNER and FLAUM, *Circuit Judges*.

POSNER, *Circuit Judge*. James, a former inmate of Indiana's New Castle Correctional Facility, appeals from an adverse judgment, following the district judge's grant of summary judgment for the defendants, in his suit under 42 U.S.C. § 1983 against two doctors who he contends were deliberately indifferent to his need for medical treatment for an infected toenail and an injury to his jaw.

In October 2007, not long after his transfer to the New Castle prison from another prison, James completed a medical-request form for treatment of an ingrown toenail that he said was both bleeding and pushing into the left side of the toe. Dr. Lorenzo Eli, one of the two defendants in James's suit, examined him the next day, diagnosed the nail as infected, ordered antibiotics for treatment of the infection, and referred him to a foot specialist. A week later, when James saw him again because of continued pain in his toe, Dr. Eli prescribed additional drugs. Almost a month after that visit the doctor removed the infected toenail.

The following month, James, who was taking a narcotic prescribed to deal with continued pain from the foot that had had the infected toenail and that was healing from the surgery to remove it, fell while "hopping up the steps" to his housing unit, and hurt his jaw. Thrice he submitted forms requesting emergency treatment of the jaw but they went unanswered. About a month later his jaw "cracked" while he was eating. He reported the injury to Dr. Eli, who told him to fill out another medical-request form, and he did so (and the doctor signed it), requesting x-rays of his jaw as soon as possible. The x-rays were taken and revealed a fractured left mandible (i.e., lower jaw bone on the left side of the mouth).

Consultation with a plastic surgeon was advised, and Dr. Nicolas Villanustre, the other defendant in this case, who is a plastic surgeon, examined James and advised against surgery because of the passage of time since his jaw injury and what Dr. Villanustre deemed to be the "good function" of James's jaw, but recommended a soft diet for James for two

weeks and a follow-up appointment at the end of that peri-
od.

That was that for the time being. But two years later
James filed the present suit, a pro se suit against a variety of
medical and other prison personnel, whom he accused of
deliberate indifference to his infected toenail and broken jaw
because of their failure to provide emergency treatment for
those injuries. He contended that Dr. Eli's failure to obtain
timely treatment for the toenail had resulted in a staph infec-
tion and unnecessary suffering, that the failure to perform
surgery on his jaw had been motivated by what the surgery
(which would have been performed in a hospital rather than
in the prison infirmary) would have cost the prison, and
that—seven years later—he still suffers pain and temporo-
mandibular joint dysfunction from the jaw injury. (Tem-
poromandibular joint disorder (TMD) is a congeries of con-
ditions that affect jaw muscles, joints, and nerves, causing
facial pain, sometimes chronic. Symptoms may occur on one
or both sides of the face, head or jaw, or develop after an in-
jury. See *Know Your Teeth*: "Temporomandibular Joint Disor-
der," Nov. 2008, www.knowyourteeth.com/infobites/abc/
article/?abc=t&iid=334&aid=1351 (visited Jan. 24, 2017). The dis-
trict judge eventually dismissed all the defendants except Eli
and Villanustre.

James had asked the district judge to recruit a lawyer for
him, pointing out that he was now the inmate of a prison in
a different state, far from Indiana (the prison is in Arizona),
and was suffering from daily migraine headaches. He also
said he needed a medical expert to assist him in his case, and
added that he had limited access to legal materials, limited
education, and no litigation experience, and that he had tried

to obtain a lawyer but had not succeeded. He had been treated in Arizona by a dental surgeon named Dr. Ronald Quintia and had tried but failed to obtain his medical record from the doctor for possible use in his case.

In *Junior v. Anderson*, 724 F.3d 812, 815–16 (7th Cir. 2013), we reversed the district court for declining to try to recruit a lawyer for a prisoner who needed help to locate and depose witnesses while housed in another prison more than 300 miles away (in James's case, more than a thousand miles away, for remember that he is in prison in Arizona). The district judge in the present case said that James "is within the spectrum of 'most indigent parties' because he has had a meaningful opportunity to present his claims, he has demonstrated familiarity with his claims and the ability to present them, because the issues presented by his claims are not complex, and because this does not appear to be a case in which the presence of counsel would make a difference in the outcome." Without a lawyer and a medical expert, however, James would be totally outclassed by the defense, just like the plaintiff in *Rowe v. Gibson*, 798 F.3d 622 (7th Cir. 2015), an Indiana state prisoner claiming deliberate indifference by prison medical staff to his gastroesophageal reflux disease, but unable to obtain counsel or a medical witness, resulting in the district judge's grant of summary judgment to the defendants. We reversed and told the judge to try to recruit counsel for the plaintiff and find a medical expert to assist him. (The case was then settled.)

Despite the focus in James's case on his medical treatment, he was never able to obtain a full set of the medical records regarding his jaw injury, and prison staff kept taking away boxes of his legal materials during the case. His dis-

covery requests to Drs. Villanustre and Eli yielded nothing. At summary judgment the judge remarked that when informed of James's jaw injury Dr. Eli had provided "timely and appropriate care," but without his medical records James had no opportunity to make a case that the care he'd received hadn't been timely and appropriate. A lawyer would have been particularly helpful with discovery in James's case. Moreover, the facts on which James bases his suit are straightforward; assisting him with discovery would not have been an onerous task for a lawyer.

We are mindful that there is no right to an appointed lawyer in civil litigation. We are mindful too that despite lawyers' ethical obligation to assist those who are too poor to afford counsel, there may be a dearth of lawyers in a district who are willing and able to serve in this sort of case, and 28 U.S.C. § 1915 does not authorize a district court to command unwilling lawyers to represent prisoners. *Mallard v. U.S. District Court for the Southern District of Iowa*, 490 U.S. 296, 310 (1989). When there is a scarcity of willing lawyers, a trial judge can and should exercise discretion to assign those lawyers to cases in which they are most needed. But we have also recognized (and not only in *Rowe v. Gibson*) that lawsuits involving complex medical evidence are particularly challenging for pro se litigants. See, besides *Rowe, Dewitt v. Corizon, Inc.*, 760 F.3d 654, 658 (7th Cir. 2014); *Henderson v. Ghosh*, 755 F.3d 559, 566 (7th Cir. 2014); and *Santiago v. Walls*, 599 F.3d 749, 761 (7th Cir. 2010). If a pro se plaintiff in such a case is unable despite his best efforts to obtain a lawyer and a medical expert, and if the case would have a chance of success were the plaintiff represented by counsel, the trial judge should endeavor to obtain them for him. *Rowe v. Gibson*, *supra*, 798 F.3d at 631–32; *Miller v. Campanella*, 794 F.3d 878, 880

(7th Cir. 2015); *Henderson v. Ghosh, supra,* 755 F.3d at 566; *Montgomery v. Pinchak,* 294 F.3d 492, 504–05 (3d Cir. 2002).

Without an expert witness James could challenge the defendants' assertions that they had provided adequate care only by offering his own opinion on the matter—an offer the district court thrice dismissed as mere "disagreement [by a lay person] with medical professionals." In his final order refusing to recruit counsel for James the judge invoked James's "well-written submissions," "awareness of the facts," and "understanding of the applicable legal standard" to conclude that he could litigate effectively without counsel's assistance. But none of these supposed "assets" could transform James into a medical expert or find him medical evidence to establish that reputable medical professionals would have strongly disagreed with the treatment that he received for his injuries.

Now it is possible that, more than nine years having elapsed since the injury to his jaw, the plaintiff is incorrectly attributing his present pain and jaw dysfunction to the injury; and it is also possible that he received adequate treatment from the two defendant doctors and wouldn't have benefitted from surgery on his jaw. Yet he says he still experiences jaw pain and dysfunction (difficulty eating, sleeping, etc.) and recently he's been diagnosed with a tumor in his neck, which he attributes to his jaw injury because the tumor is close to his jaw. That may be mistaken, but it definitely is possible that he has a meritorious Eighth Amendment claim if his current difficulty with his jaw is attributable to the injury and if there was some type of treatment or surgery that could have prevented it, which he would have received had he been given adequate medical treatment. On the basis of

the record compiled so far, all we know is that he *may* have suffered terribly because of inadequate treatment and *may* have sustained permanent injury.

We close by noting that this suit began in 2009 and will soon be in its eighth year even though it should have been apparent from the start that the plaintiff would need counsel and a medical expert witness in order to get to first base. We are vacating the judgment of the district court for the reasons explained in this opinion, and we urge the district court on remand to expedite the litigation.

VACATED AND REMANDED