**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 20, 2017[*]
Decided December 19, 2017

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 17-1473

| | |
|---|---|
| ALTAI THORNTON, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 14-cv-00127 |
| | |
| SALVADOR GODINEZ, et al., | Michael J. Reagan, |
| *Defendants-Appellees.* | *Chief Judge.* |

## O R D E R

Altai Thornton, a prisoner at Menard Correctional Center, was stabbed in the eye and required treatment including surgery. Unsatisfied with the care he received, Thornton sued prison doctors and officials under 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs. Specifically, he asserts that the defendants delayed an MRI that an ophthalmologist had ordered and did not ensure that the stitches in his eye were removed at the right time. The district court entered summary

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

judgment for the defendants, and Thornton appeals. Because no reasonable jury could find that the defendants acted with deliberate indifference, we affirm the judgment.

We recount the facts in the light most favorable to Thornton, the nonmovant. *Grieveson v. Anderson*, 538 F.3d 763, 765 (7th Cir. 2008). After another inmate stabbed Thornton in the eye at around 5:00 p.m. on March 19, 2012, medical staff cleaned and dressed the wound and gave him Tylenol; the on-duty doctor (reached by telephone) requested notification of any change in his condition overnight. The next day, Thornton saw Dr. John Shepherd, another doctor at Menard; Dr. Eric Johnson, an optometrist; and, finally, an off-site ophthalmologist, Dr. Ukeme Umana. Dr. Umana performed surgery on Thornton's eye to reattach his eyeball to the surrounding muscle, and gave him 14 stitches. Two days later at Thornton's follow-up exam, Dr. Umana ordered an MRI of his head and eye.

Thornton remained in the prison's health care unit until April 17 so that medical staff could see him daily. On March 26, Thornton was seen by another doctor at Menard who noted that he would submit the MRI request to the "collegial review" panel for approval. The next day, Dr. Shepherd checked on Thornton. On March 29 Dr. Shepherd saw Thornton for the last time and wrote on his chart that Thornton had no new complaints and that the panel had approved the MRI. Nursing staff scheduled the test for April 10 (just under three weeks after Dr. Umana had ordered it).

Dr. Umana saw Thornton on April 5, did not remove his stitches, and recommended that the MRI be completed "ASAP." Thornton's MRI occurred as scheduled on April 10, and Dr. Umana did not recommend further treatment based on the results. In late April Thornton submitted two medical slips asking the healthcare unit when his stitches would be removed; Dr. Umana performed that procedure on May 3. Dr. Umana told him that the Menard doctors could have removed the stitches.

Meanwhile, on April 30 Thornton had filed a grievance alleging that he did not receive the MRI ordered by Dr. Umana and that the stitches in his eye were causing him pain. Warden Mike Atchison treated the complaint as an emergency grievance, but denied it after an investigation because the MRI had already occurred and the staff had moved up Thornton's stitches-removal appointment from June to May 3. Thornton appealed the denial of his grievance to the Administrative Review Board, which denied his appeal. Months later, Salvador Godinez, the director of Illinois Department of Corrections, concurred in the denial.

The district judge screened Thornton's complaint, *see* 28 U.S.C. § 1915A, and allowed him to proceed on a claim that Dr. Shepherd, Atchison, and Godinez were deliberately indifferent for delaying his MRI and failing to remove his stitches. Thornton asked the court three times for recruited counsel, but was repeatedly denied.

Eventually, the defendants moved for summary judgment. Dr. Shepherd argued that he played no part in scheduling the MRI and that Dr. Umana, who was in charge of directing Thornton's treatment, never instructed him to remove Thornton's stitches. Atchison and Godinez argued that they were entitled to rely on the medical staff's determinations regarding Thornton's care. The district court granted the defendants' motions and, after dismissing Dr. Johnson (the prison optometrist) because he was never served, entered judgment in their favor.

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference "is more than negligence and approaches intentional wrongdoing." *Collignon v. Milwaukee Cty.*, 163 F.3d 982, 988 (7th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). A claim of deliberate indifference has both an objective and a subjective component. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). All defendants conceded that Thornton's eye injury was serious. The inmate then must demonstrate that prison officials acted with a "sufficiently culpable state of mind." *Id.* They must be aware of the prisoner's serious medical needs and disregard an excessive risk that the lack of treatment poses to the prisoner's health or safety. *Grieveson*, 538 F.3d at 775.

No reasonable jury could find that Atchison and Godinez acted with deliberate indifference. As non-medical defendants, they were entitled to reasonably rely on the expertise of the medical professionals. *See Johnson v. Doughty*, 433 F.3d 1001, 1010–11 (7th Cir. 2006); *Greeno*, 414 F.3d at 656–57. After Thornton filed his grievance on April 30, Atchison classified it as an emergency and directed the grievance officer to investigate. The health care unit told him that Thornton's MRI was already performed and that Thornton's appointment with Dr. Umana was moved up from June to May 3. Atchison cannot be said to have exhibited deliberate indifference when he appropriately considered the grievance urgent, investigated immediately, and relied on the reports of medical staff that Thornton was receiving the care he needed. *See Greeno*, 414 F.3d at 655. And Godinez did not even know about Thornton's situation until the

following year when he concurred with Atchison's determination. Nothing in the record suggests that by upholding the denial of Thornton's grievance, Godinez disregarded a need for treatment that was completed long ago. *See id*. at 656*.* The district court properly entered summary judgment for both Atchison and Godinez.

As for Dr. Shepherd, Thornton argues that he presented evidence that created a genuine issue of material fact about Dr. Shepherd's actions, but there is zero evidence that the doctor was deliberately indifferent. Nothing suggests that Dr. Shepherd even knew before March 27 that Dr. Umana had ordered an MRI a week earlier. Dr. Shepherd was not involved with the panel that approved Thornton's MRI on March 29, and there is no evidence that he had any role in scheduling the MRI for April 10—scheduling outside procedures is handled by nursing staff. Dr. Umana did not order any follow-up care after reviewing the results, so no required treatments were delayed. And Thornton cannot show that he somehow experienced prolonged pain or discomfort while waiting to get the test—a diagnostic tool, not a treatment.

Further, there is no evidence that Dr. Shepherd personally delayed removing Thornton's stitches. The surgeon, Dr. Umana, did not remove Thornton's stitches at the follow-up appointment on April 5, but instead waited until the next appointment on May 3. The only inference to be drawn is that the surgeon believed that the stitches were not ready for removal until sometime after April 5—well after Thornton's last appointment with Dr. Shepherd in March. No evidence suggests that Dr. Shepherd personally was responsible for removing the stitches but failed to do so. *See Arnett v. Webster*, 658 F.3d 742, 753–54 (7th Cir. 2011) (affirming entry of summary judgment to doctor who treated inmate but then left inmate in the care of other medical professionals). Although Thornton filled out two medical slips in late April asking the health care unit when his stitches would be removed, those slips were not addressed to Dr. Shepherd, and the record does not reflect that Dr. Shepherd was aware of Thornton's questions. Because no reasonable jury could find that Dr. Shepherd was deliberately indifferent, the district court correctly entered summary judgment.

We turn now to Thornton's contention that the magistrate judge abused his discretion by denying Thornton's three motions for attorney representation. *See Pruitt v. Mote*, 503 F.3d 647, 661 (7th Cir. 2007) (en banc). When an indigent plaintiff like Thornton requests recruitment of counsel the district court must ask whether he made reasonable attempts to independently obtain counsel (or was prevented from doing so), and whether it appears that he is competent to litigate the case. *Id*. at 654. We will reverse only if Thornton demonstrates prejudice. *Id*. at 659.

The magistrate judge denied Thornton's first motion for counsel because Thornton had not demonstrated reasonable efforts to retain counsel. When he later did, the magistrate judge concluded that Thornton was competent to litigate the case himself. To support his determination, the judge noted that Thornton's complaint was clear and specific, that Thornton adequately expressed the factual and legal bases for his claims, and that he followed the instructions of the court. The judge added that Thornton's filings were well written and easy to understand. The magistrate judge considered the *Pruitt* factors, *see* 503 F.3d at 655–56, and did not abuse his discretion. Moreover, we cannot discern how having an attorney could have changed the outcome.

We are not persuaded by Thornton's argument that because he was transferred to a different prison, he could not identify witnesses or other potential defendants, nor adequately investigate his claims. Transfer is an important factor to consider in deciding whether to recruit counsel for indigent prisoners. *See Junior v. Anderson*, 724 F.3d 812, 815 (7th Cir. 2013) (collecting cases). But talking to other inmates would not have helped him investigate the defendants' state of mind, and anyway he made no request for information from inmates at his former institution or for the identities of any other potential defendant who was involved in his ordeal. *See Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014). Instead Thornton pursued the more promising route of serving document requests and interrogatories on the defendants. Finally, Thornton does not explain what kind of investigation he wanted to do at Menard but could not.

Thornton also argues that without an attorney, he could not enlist an expert medical witness. Medical testimony is often required in deliberate-indifference cases. *See, e.g., James v. Eli*, 846 F.3d 951, 953 (7th Cir. 2017). But this case primarily turns on whether the defendants he named were responsible for the alleged deficiencies in his medical care. An expert could not say anything about whose responsibility it was to schedule the MRI or take out the stitches. And it is doubtful, given the evidence in the record, that an expert would have been able to conclude that Dr. Shepherd, specifically, was so far afield from the standard of care that his actions surpassed malpractice and instead approached intentional wrongdoing. *See Arnett*, 658 F.3d at 751.

We briefly note that an attorney may have helped Thornton serve Dr. Johnson, the prison's optometrist, who was ultimately dismissed with prejudice from this case for failure to prosecute. *See* FED. R. CIV. P. 41(b). Indigent prisoners representing themselves are entitled to rely on the United States Marshals to effect service of process. *Williams v. Werlinger*, 795 F.3d 759, 760 (7th Cir. 2015). But somehow the Marshals could

not locate an optometrist who worked at Menard, and there is no evidence that the district court appropriately followed up when the Marshals did not serve Johnson. *See id*. Nevertheless, on appeal Thornton does not argue that dismissing Johnson from the case for lack of service was an abuse of discretion. And, even if Dr. Johnson had been served, nothing in the record (including Thornton's complaint) suggests that Johnson was personally involved with either of his two concerns: a delayed MRI or a failure to timely remove his stitches.

AFFIRMED.